UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SEAN PATRICK ESTY,

      Petitioner,

v.                                                                        Case No. 3:14cv357/LC/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 11), with supporting memorandum (doc. 12). Respondent moves to dismiss the petition as an untimely, unauthorized second or successive habeas corpus application, arguing in the alternative that petitioner's claims are barred by abuse-of-the-writ principles and either fail to state a claim on which federal habeas relief can be granted or are procedurally defaulted (doc. 18). Respondent has provided relevant portions of the state court record (doc. 18). Petitioner opposes all of respondent's arguments, and has submitted additional materials (doc. 23). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases

in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that the petition does not run afoul of AEDPA's restrictions on "second or successive" petitions or abusive claims, and is not barred by AEDPA's statute of limitations; however, the amended petition should be denied because the claims therein either fail to state a plausible claim for federal habeas relief, or are procedurally defaulted.

## BACKGROUND AND PROCEDURAL HISTORY

On January 28, 1992, a grand jury indicted petitioner for first degree murder with a weapon of fifteen-year-old Lauren Ramsey, in Escambia County Circuit Court Case Number 92-132.  (Doc. 18, Ex. A).[1]  Petitioner proceeded to jury trial.  (Ex. F). The evidence presented at trial is fully laid out in this court's order (which incorporated the magistrate judge's report and recommendation) denying petitioner's first federal habeas petition, *Esty v. McDonough*, No. 3:04cv363/MCR/EMT, 2007 WL 1294602, at *2-*10 (N.D. Fla. May 1, 2007), and can also be found in the Florida Supreme Court's opinion affirming petitioner's conviction, *Esty v. State*, 642 So. 2d 1074, 1075-1076 (Fla. 1994) (copy at Ex. J).  The jury found petitioner guilty as charged of first degree murder with a weapon (Ex. F, p. 1436; Ex. O, p. 34), and recommended that petitioner receive a life sentence without the possibility of parole for twenty-five years.  (Ex. F, p. 1576; Ex. O, p. 41).  The trial judge overrode the jury's recommendation and sentenced petitioner to death.  (Ex. O, pp. 52-84). Judgment was rendered September 9, 1992.  Petitioner appealed to the Florida Supreme Court, raising nine guilt phase issues and three penalty phase issues.  (Ex. G).  On August 11, 1994, the Florida Supreme Court affirmed petitioner's conviction

---

[1]All references to exhibits are to those provided at Doc. 18, unless otherwise noted.

but reversed the death sentence and remanded for the imposition of a life sentence without eligibility for parole for twenty-five years. *Esty*, 642 So. 2d at 1075-1081 (copy at Ex. J). Petitioner's motion for rehearing was denied on October 5, 1994. (Ex. L). The mandate issued November 7, 1994. (Ex. O, p. 85). The trial court entered a new judgment on January 25, 1995, reflecting the new sentence. (Ex. O, pp. 103-108). Petitioner filed a petition for writ of certiorari in the United States Supreme Court. (Ex. M). The Supreme Court denied the petition on March 20, 1995. *Esty v. Florida*, 514 U.S. 1027, 115 S. Ct. 1380, 131 L. Ed. 2d 234 (1995) (Table) (copy at Ex. N).

On December 26, 1996, petitioner filed a counseled motion for postconviction relief in state court under Florida Rule of Criminal Procedure 3.850, raising four grounds of ineffective assistance of trial counsel. (Ex. O, pp. 109-117). The state circuit court conducted an evidentiary hearing, and denied relief in an order filed November 12, 2002. (Ex. O, pp. 625-845). The Florida First District Court of Appeal ("First DCA") per curiam affirmed without opinion on May 26, 2004, with the mandate issuing July 12, 2004. *Esty v. State*, 875 So. 2d 1242 (Fla. 1st DCA 2004) (Table) (copy at Ex. T).

On October 21, 2004, petitioner filed a counseled § 2254 petition in this court, claiming: (1) trial counsel was ineffective in four respects (Ground 1); (2) the trial court committed constitutional error in nine respects (Grounds 2-10). (Ex. W; *see also Esty v. McDonough*, Case No. 3:04cv363/MCR/EMT, Doc. 1). This court denied Grounds 1, 3, 4, 7, 8 and 10 on the merits, determined Ground 2 was barred by the *Stone v. Powell* doctrine, determined Ground 5 failed to raise a federal constitutional claim and was procedurally defaulted, and determined that Grounds 6 and 9 were procedurally defaulted. (Doc. 18, Ex. X; *see also Esty v. McDonough*,

No. 3:04cv363/MCR/EMT, 2007 WL 1294602 (N.D. Fla. May 1, 2007)).  The United States Court of Appeals for the Eleventh Circuit denied a certificate of appealability. (Doc. 18, Ex. Y; *see also Esty v. McDonough*, Case No. 3:04cv363/MCR/EMT, Doc. 48).

On May 31, 2013, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a), arguing that the trial court failed to award him the correct amount of jail credit and that he was entitled to an additional five (5) days.  (Ex. Z, pp. 1-34).  The state circuit court granted the motion on June 25, 2013, as follows:

### ORDER GRANTING DEFENDANT'S MOTION FOR ADDITIONAL JAIL CREDIT
### and
### DIRECTING THE CLERK OF COURT TO CORRECT SENTENCE

**THIS CAUSE** is before the Court on Defendant's *pro se* "Motion to Correct Illegal Sentence," filed June 5, 2013, pursuant to rule 3.800(a) of the Florida Rules of Criminal Procedure.  The Court, after review of the instant motion, record, and relevant legal authority, finds that Defendant is entitled to relief.

On September 9, 1992, the Court sentenced defendant to death for a conviction of first-degree murder.  On appeal, the Supreme Court of Florida reversed and remanded the sentence.  On January 25, 1995, the Court resentenced Defendant to life in prison without possibility of parole for 25 years.  The Court announced at the original sentencing that Defendant would be awarded 241 days of jail credit.  At the resentencing, the Court again awarded Defendant 241 days of jail credit, plus all time previously served in prison.

In the instant motion, Defendant alleges that both his original jail credit award and his jail credit award at resentencing were incorrect.  Defendant contends that he is owed a total of 246 days of jail credit, five

more days than he was credited.

Defendant was originally arrested on January 11, 1992, and was sentenced on September 9, 1992; he remained incarcerated during the entirety of that time.  He is therefore owed a total of 243 days of jail credit from his time incarcerated before his original sentencing.

Florida law makes it clear that the trial court is to award jail credit for the time spent in county jail awaiting resentencing.  *See Smith v. State*, 93 So. 3d 1181 (Fla. 1st DCA 2012).  Defendant asserts that he was in county jail from January 23, 1995, until the date of resentencing, January 25, 1995.  Because Defendant was given only the 241 days that he had been given at his original sentencing, it is clear that the Court did not award him the days he spent awaiting resentencing.  This Court finds that Defendant should be awarded credit for January 23-25, 1995, a total of three days of jail credit.  Based upon these considerations, therefore, Defendant will be awarded five additional days of jail credit against the sentence in the above-styled case, for a grand total of 246 days of jail credit.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.     Defendant's *pro se* "Motion to Correct Illegal Sentence" is **GRANTED**;

2.     Defendant is awarded five (5) more days of jail credit in addition to what he has already been credited in the above-styled case, for a total of 246 days of jail credit;

3.     The Clerk of Court is **DIRECTED** to correct Defendant's sentence in accordance with this order;

4.     The Clerk of Court is further **DIRECTED** to forward a copy of the corrected sentencing document to the Department of Corrections; and

5.     Defendant  has 30 days from the date of this order to file a notice

of appeal, should he choose to do so.

(Ex. Z, pp. 35-37).  On June 25, 2013, a "Corrected Judgment and Sentence" was filed.  (Ex. Z, pp. 38-42; *see also* Ex. X, Escambia Circuit Court docket printout, Items 499 and 500 reflecting the recording and filing of a corrected judgment and sentence).  Petitioner filed a notice of appeal from the June 25, 2013 order, indicating that he was also appealing "the original judgment of guilt."  (Ex. Z, p. 43).  Petitioner asserted:  "The nature of this order is a final order granting motion to correct illegal sentence for Murder-First Degree.  The District Court of Appeals has jurisdiction for direct review, as Defendant was not properly and validly sentenced until June 25, 2013."  (*Id*.).  Petitioner's "Statement of Judicial Acts To Be Reviewed" identified no errors relating to the corrected sentence; it identified only pre-trial and trial errors relating to petitioner's undisturbed conviction of first degree murder.  (Ex. Z, pp. 62-66).  On August 20, 2013, the First DCA issued the following order to show cause:

> The record reflects that appellant filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) in the lower tribunal seeking an additional five days of jail credit.  The circuit court granted the motion in full.
>
> Accordingly, appellant shall show cause on or before September 16, 2013, why the appeal should not be dismissed for lack of standing on the authority of Dept. of Health v. Fresenius Med. Care Holding, Inc., 935 So. 2d 636 (Fla. 1st DCA 2006) ("An appeal of a wholly favorable judgment must be dismissed.").

(Ex. AA).  Petitioner argued in response that he had standing to appeal, asserting, *inter alia*, that his appeal was not of a wholly favorable judgment because he was appealing from the judgment of guilt, and that his Rule 3.800 appeal was a timely and proper vehicle for obtaining "direct review" of his conviction.  (Ex. BB).  Petitioner also filed an initial brief.  (Doc. 1, App. B).  The First DCA dismissed petitioner's

appeal on October 10, 2013. *Esty v. State*, 125 So. 3d 155 (Fla. 1st DCA 2013) (Table) (copy at Doc. 18, Ex. CC). Petitioner's motion for rehearing and to reinstate the appeal was denied on November 21, 2013. (Doc. 18, Ex. EE). The mandate issued December 9, 2013. (Ex. FF).

On February 27, 2014, petitioner filed in the Florida Supreme Court a *pro se* pleading titled "Petition for Writ of Habeas Corpus to Correct Manifest Injustice". (*See* Doc. 1, App. E; *see also* Doc. 1, App. A, p. 107). The Florida Supreme Court denied relief on June 19, 2014, stating:

> The petitioner has filed a petition for writ of habeas corpus with the Court. To the extent the petitioner seeks a writ of habeas corpus, the petition is denied. To the extent the petitioner seeks to invoke the Court's all writs jurisdiction, the petition is dismissed. *See Williams v. State*, 913 So.2d 541, 543-44 (Fla. 2005); *St. Paul Title Ins. Corp. v. Davis*, 392 So.2d 1304, 1305 (Fla. 1980). To the extent the petitioner seeks a writ of mandamus, the petition is dismissed. *See Mathews v. Crews*, 132 So.3d 776 (Fla. 2014). Any motions or other requests for relief are hereby denied.

*Esty v. Crews*, No. SC14-560, 147 So. 3d 522 (Fla. 2014) (Table) (copy at Doc. 1, App. A, p. 108). On September 15, 2014, petitioner filed a petition for writ of certiorari in the United States Supreme Court presenting the following question: "Do the legal dictates and essential requirements of law, as set forth in *Burton v. Stewart*, 127 S. Ct. 793 (2007); and *Ferreira v. Sec'y Dept. of Corr*., 494 F.3d 1286 (11th Cir. 207), apply to Florida so that a resentencing correcting an illegal sentence constitutes a new judgment which gives the defendant the right to challenge his underlying conviction and the resentencing on direct appeal?" (Doc. 11, App. I). The petition was denied on December 1, 2014. *Esty v. Crews*, No. 14-6376, — U.S. —, 135 S. Ct. 716, 190 L. Ed. 2d 448 (2014) (Table).

On May 28, 2014, petitioner filed a *pro se* second or successive motion for postconviction relief under Fla. R. Crim. P. 3.850, raising the following grounds for relief:  (1) the prosecutor knowingly used false testimony to obtain petitioner's conviction; (2) ineffective assistance of trial counsel for failing to object to the prosecutor's use of false testimony; (3) ineffective assistance of trial counsel for failing to advise petitioner that he could volunteer to testify before the grand jury; (4) ineffective assistance of trial counsel for failing to make a sufficient argument for a judgment of acquittal; and (5) the cumulative prejudice of the foregoing errors deprived petitioner of a fair and impartial trial.  (Ex. GG, pp. 1-11).  The state circuit court denied the motion as untimely on June 11, 2014.  (*Id*., pp. 119-127).  The First DCA per curiam affirmed without opinion on November 17, 2014.  *Esty v. State*, No. 1D14-4036, 155 So. 3d 342 (Fla. 1st DCA 2014) (Table) (copy at Ex. II).  The mandate issued January 26, 2015.  *See* www.1dca.org, Case No. 1D14-4036.

Petitioner initiated the instant federal habeas proceeding by filing a § 2254 petition on July 23, 2014 (doc. 1), which he later amended (doc. 11).  The amended petition raises seven claims.  (Doc. 11).  Respondent moves to dismiss the petition as successive and untimely.  (Doc. 18).  Respondent argues in the alternative that petitioner is not entitled to federal habeas relief on any of his claims because they either are barred by the law of the case doctrine, are barred by the abuse-of-the-writ doctrine, fail to state a claim on which federal habeas relief can be granted, or are procedurally defaulted.  (*Id*.).  Petitioner responds that his petition is not second or successive, because the correction of his judgment and sentence to reflect additional jail credit constitutes a new judgment.  (Doc. 23).  As to respondent's remaining arguments, petitioner responds that his petition is timely; that his claims are not abusive; that his claims are not barred as unexhausted or procedurally defaulted

because the state courts deprived him of a corrective process when he attempted to present his claims; that any procedural default is excused by the prosecutor's fraud on the court and petitioner's actual innocence; and that his claims have merit. (*Id*.).

JURISDICTION

Title 28 U.S.C. § 2244(b)(3)(A) provides:  "Before a second or successive [habeas corpus] application . . . is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  A district court lacks jurisdiction to consider a "second or successive" habeas corpus petition that was not previously authorized by an appellate court. *Burton v. Stewart*, 549 U.S. 147, 127 S. Ct. 793, 796, 799, 166 L. Ed. 2d 628 (2007) (holding that district court lacked jurisdiction to entertain second habeas petition since prisoner did not obtain order authorizing him to file the petition); *Fugate v. Dep't of Corr.*, 301 F.3d 1287, 1288 (11th Cir. 2002) (same).  The parties do not dispute that petitioner did not obtain permission from the Eleventh Circuit to file the present petition.  Thus, this court has jurisdiction to hear the petition only if it is not considered a "second or successive" application under § 2244(b).

Respondent argues the present petition is second or successive because petitioner filed a federal habeas petition in 2004 challenging his murder conviction. (*See* Doc. 18, pp. 39-49).  Petitioner responds that although he filed a federal petition in 2004, the correction of his sentence to award additional jail credit resulted in a new, corrected judgment and sentence.  (Docs. 11, 23).  Petitioner contends his present petition is his first challenge to the new judgment and, therefore, is not second or successive.  (*Id*.).

In *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 177 L .Ed. 2d 592 (2010), the Supreme Court decided whether a habeas petition challenging a state

prisoner's sentence after an intervening resentencing was "second or successive." Mr. Magwood challenged a death sentence imposed as part of resentencing in response to a conditional writ from a federal district court.  Magwood argued that his sentence was unconstitutional because he did not have fair warning at the time of his offense that his conduct would be sufficient to warrant a death sentence under Alabama law, and that his attorney rendered ineffective assistance during the resentencing proceeding.  The *Magwood* Court concluded that to determine whether a petition is second or successive, the court must look to the *judgment* challenged. 561 U.S. at 332-333.  "'Final judgment in a criminal case means sentence.  The sentence is the judgment.'"  *Burton*, 549 U.S. at 156 (*quoting Berman v. United States*, 302 U.S. 211, 212, 58 S. Ct. 164, 82 L. Ed. 204 (1937)); *see also id.*, 549 U.S. at 156 (defining "judgment" as "the judgment pursuant to which [the petitioner] [i]s being detained.").  The *Magwood* Court held that "where . . . there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not second or successive."  *Magwood*, 561 U.S. at 341-42 (citation and internal quotation marks omitted).  Because Mr. Magwood challenged only his new sentence and did not attempt to challenge his underlying conviction, the Court declined to address the question of whether its interpretation of the phrase "second or successive" in § 2244(b) "would allow a petitioner who obtains a conditional writ as to his sentence to file a subsequent application challenging not only his resulting, *new* sentence, but also his original, *undisturbed* conviction."  *Id*. at 342.  The Eleventh Circuit answered that question in *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273 (11th Cir. 2014).

In *Insignares*, the petitioner filed a federal habeas petition in 2007.  The petition was dismissed as untimely.  On April 1, 2009, Insignares filed a Florida Rule

3.800 motion to correct his sentence.  The state judge granted the motion and reduced the mandatory-minimum imprisonment sentence for Insignares' attempted-murder conviction from 20 years to 10 years, but otherwise left his conviction and sentence intact.  The judge entered the corrected sentence and new judgment on May 22, 2009.  After unsuccessfully challenging his conviction in state court, Insignares filed another § 2254 petition in 2011.  Insignares' 2011 petition *again challenged his conviction and raised the same issues as his 2007 petition*.  The State argued the second petition was successive.  Insignares argued that the reduction of his mandatory-minimum sentence in 2009 resulted in a new judgment.  The Eleventh Circuit agreed with Insignares and concluded that "when a habeas petition is the first to challenge a new judgment, it is not 'second or successive,' regardless of whether its claims challenge the sentence or the underlying conviction."  755 F.3d at 1281.  In reaching this conclusion, the court explained that "there is only one judgment, and it is comprised of both the sentence and the conviction."  *Id*.  The court went on to review Insignares' claims on the merits.

Here, the state court granted petitioner's motion to correct sentence, awarded petitioner five additional days of jail credit, and directed the clerk to correct petitioner's sentence.  A "Corrected Judgment and Sentence" was filed on June 25, 2013.  Respondent argues that *Magwood* and *Insignares* are distinguishable, because the trial court here "did not issue a new judgment and sentence" (doc. 18, p. 43); rather, the clerk of court merely made a "notation" on the judgment and sentence that petitioner was awarded additional jail credit, and "the judgment and sentence otherwise remained the same and including the original judge's signature dated January 25, 1995."  (*Id*.).  Respondent characterizes the correction of petitioner's sentence as "purely a ministerial act" (doc. 18, p. 43), emphasizing that "there was no

resentencing hearing held, nor new judgment rendered, and there was nothing to appeal when the judgment was noted." (*Id*., p. 44).

Despite the perhaps trivial change actually effectuated, petitioner's January 25, 1995 judgment was nonetheless superceded by the June 25, 2013 corrected judgment and sentence – a new judgment which modified petitioner's sentence by awarding additional jail credit.  The corrected judgment and sentence reflects the most recent sentence authorizing petitioner's current detention.  *See Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1292-93 (11th Cir. 2007) ("[T]he judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the petitioner's current detention.").  Precedent compels the conclusion that petitioner's 2013 corrected judgment and sentence constitutes a new judgment intervening petitioner's 2004 habeas petition and his present petition.  This conclusion is consistent with *Magwood*, *Insignares*, and this court's prior decisions.  *See, e.g., Mundy v. Sec'y Dep't of Corr.*, No. 5:11cv71-RH/GRJ (N.D. Fla. Apr. 18, 2012) (unpublished order) (concluding that federal habeas petition was not second or successive habeas corpus application because petitioner's sentence was amended for award of jail credit after first federal petition was dismissed as untimely, and subsequent petition was first petition challenging amended judgment (*citing Magwood*, *Ferreira*, *and Campbell v. Sec'y, Dep't of Corr.*, 447 F. App'x 25 (11th Cir. 2011))).  As a practical matter, although this result is certainly unappealing to respondent, any other result would require some sort of *ad hoc* evaluation of the intervening judgment in order to determine whether such judgment is truly new.

The court's conclusion also draws support from the analogous context of applying the AEDPA's statute of limitations (determining whether the statute of limitations runs from the date of the original conviction and sentence or from the date

of the corrected sentence).  As District Judge Hinkle explained in addressing the timeliness of a federal habeas petition filed six years after the original judgment was entered but within one year of the state court's amending the sentence to award additional jail credit:

> The state court entered the 2011 amendment because the 2005 sentence failed to give Mr. Walker credit for time served.  In Florida, a sentence that fails to give credit for time served is an illegal sentence. *See State v. Mancino*, 714 So.2d 429, 433 (Fla. 1998) (stating that "a sentence that does not mandate credit for time served would be illegal since a trial court has no discretion to impose a sentence without crediting a defendant with time served").  When a sentence is substantively corrected, the defendant is, from that day forward, in custody on the corrected sentence, not on the original sentence.  So Mr. Walker is now in custody on the 2011 order setting out the only legal sentence; Mr. Walker is not in custody on the 2005 order setting out the illegal (and now vacated) sentence.

> The respondent says the change was only technical, much like correcting a typographical error would be technical.  But this was a substantive change.  Florida law makes that clear.

> . . . .

> . . . The law is now settled that a revised sentence is a new "judgment" and that the first petition challenging the new judgment is not second or successive.  *See Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 177 L. Ed. 2d 592 (2010); *Campbell v. Sec'y Dep't of Corr.*, 447 F. App'x, 25 (11th Cir. 2011) (unpublished opinion); *see also Wentzell v. Neven*, 674 F.3d 1124 (9th Cir. 2012); *Johnson v. United States*, 623 F.3d 41 (2d Cir. 2010); *but cf. Martin v. Bartow*, 628 F.3d 871 (7th Cir. 2010).

*Walker v. Sec'y, Dep't of Corr.*, No. 1:12cv282-RH/GRJ, 2014 WL 2095370, at *2 (N.D. Fla. May 20, 2014); *see also Brown v. Sec'y, Dep't of Corr.*, No. 1:13cv00110-MP/GRJ, 2014 WL 2991131 (N.D. Fla. July 3, 2014) (holding that petitioner was

entitled to later triggering date of statute of limitations due to state court's granting motion to correct illegal sentence and amending sentence to award additional jail credit).

Respondent contends that the conclusion that the instant petition is <u>not</u> successive allows precisely the type of unintended and absurd result feared by the dissent in *Magwood* (fears dismissed by the *Magwood* majority as "greatly exaggerated" and "hyperbolic", *see Magwood*, 561 U.S. at 340 & n.15), namely: (1) that it "wipe[s] the slate clean, allowing a prisoner who successfully challenges his sentence to then raise a plethora of new and old claims without limit in yet another petition challenging not only his new sentence, but this undisturbed conviction" (doc. 18, p. 48 (*citing Magwood*, 561 U.S. at 351-356 (Kennedy, J., dissenting))); and (2) that it "result[s] in a windfall to those prisoners who succeed in obtaining relief 'on even the most minor and discrete issue relating to his sentencing[.]'" (Doc. 18, p. 49 (*quoting Magwood*, 561 U.S. at 354 (Kennedy, J., dissenting))).  The majority in *Magwood* addressed such concerns, explaining:

> The dissent's concern that our rule will allow "petitioners to bring abusive claims so long as they have won any victory pursuant to a prior federal habeas petition," *post*, at 2810, is greatly exaggerated.  <u>A petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error. If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review</u>. *See Coleman v. Thompson*, 501 U.S. 722, 729-730, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (stating that the petitioner's "failure to present three of his federal habeas claims to the [state court] in a timely fashion has resulted in a procedural default of those claims").  In this case, the State argued that Magwood procedurally defaulted his fair-warning claim by failing to raise it

properly in his collateral challenge to the 1986 judgment, and sought dismissal on that ground.  Only after ruling that *Magwood* did not procedurally default the claim did the District Court *sua sponte* consider whether § 2244(b) barred review.  We leave that procedural-default ruling to the Court of Appeals to review in the first instance.  Here, <u>we underscore only that procedural-default rules continue to constrain review of claims in all applications, whether the applications are "second or successive" or not</u>. FN15

> FN15.  The dissent's concern that such a petitioner may "reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review," *post*, at 2810, is similarly hyperbolic.  It will not take a court long to dispose of such claims where the court has already analyzed the legal issues.

*Magwood*, 561 U.S. at 340 (emphasis added) (footnote 14 omitted).  The majority noted later:

> In any case, we cannot agree with the dissent that our reading of § 2244(b) gives a windfall to "a defendant who succeeds on even the most minor and discrete issue." *Post*, at 2809.  AEDPA permits relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  § 2254(a).

*Id*., 561 U.S. at 342 n.17.

Reading the majority and dissenting opinions in *Magwood* in their entirety and in context, this court's conclusion that the present petition is not "second or successive" within the meaning of § 2244(b), will not allow petitioner a "windfall" or a benefit unintended by AEDPA, because even if petitioner's success in obtaining additional jail credit were considered a success on a "minor and discrete issue", the fact remains that petitioner is still restricted by procedural default rules.  *See*

*Magwood*, 561 U.S. at 340 & n.15.  As the Eleventh Circuit in *Insignares* noted:

> While such a petition is not subject to AEDPA's restrictions on "second or successive" petitions, AEDPA's other limitations still apply. For example, "[a] petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error." *Magwood*, 561 U.S. at 340, 130 S. Ct. at 2801. Moreover, previously decided claims may be foreclosed by the law-of-the-case doctrine. *See Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005) ("'Under the "law of the case" doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.'" (*quoting Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir.1990) (per curiam))).

*Insignares*, 755 F.3d at 1281 n.9.

Because the present petition is petitioner's first application challenging the June 25, 2013 corrected judgment and sentence, the petition is not "second or successive" under § 2244(b).

## TIMELINESS

Because petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs this petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  The AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such

State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).  The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending.  28 U.S.C. § 2244(d)(2).

Respondent argues that the petition is untimely, because petitioner's conviction became final on March 20, 1995 (the date the United States Supreme Court denied his petition for certiorari), which was prior to the effective date of the amendment creating the time limit for filing a federal habeas petition; thus, petitioner's limitations period ran from the amendment's effective date of April 24, 1996, and expired one year later on April 23, 1997, absent statutory tolling motions.  (Doc. 18, pp. 38-39 (*citing Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209 (11th Cir. 1998))).  Respondent asserts that petitioner allowed 246 days of the limitations period to pass before filing his first statutory tolling motion on December 26, 1996 (petitioner's first Rule 3.850 motion), which remained pending until July 12, 2004.  Respondent asserts that the limitations period expired 119 days later, and that petitioner's present petition, filed several <u>years</u> after the limitations period expired, is untimely.  (Doc. 18, pp. 39-49).

In light of this court's conclusion that the June 25, 2013 corrected judgment and sentence constitutes a new judgment, the start of the limitations period must be calculated from the date the June 25, 2013 corrected judgment and sentence became

final. *Ferreira*, 494 F.3d at 1293 ("AEDPA's statute of limitations begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence." (emphasis in original)); *see also, e.g., Stites v. Sec'y for Dep't of Corr.*, 278 F. App'x 933 (11th Cir. 2008) (holding that district court erred when it calculated start of limitations period based on date state appellate court originally affirmed petitioner's convictions; holding that statute of limitations ran from date petitioner's modified sentence became final); *Walker, supra*; *Brown, supra*; *Mundy v. Sec'y Dep't of Corr.*, No. 5:11cv71-RH/GRJ (N.D. Fla. Apr. 18, 2012).  District Judge Hinkle explained just one year ago in *Walker, supra*:

> So settled authority – including decisions of the Supreme Court, the Eleventh Circuit, and this court – indicates that the statute of limitations runs from the 2011 amended sentence.  This is the most recent sentence – the sentence on which Mr. Walker is in custody, and on which he was in custody when this petition was filed.
>
> The respondent says though, that the state court did not label its 2011 order an "amended judgment."  The respondent says that because the order amending the sentence was not labeled a "judgment," it does not count. . . . [A] "judgment' under AEDPA is the state-court order imposing the sentence on which the petitioner is in custody, whether the state calls the order a "judgment" or a "sentence" or "Mary Beth."
>
> That this is the correct meaning of "judgment" is confirmed by the use of that word not only in § 2244 (as a trigger for the statute of limitations), but also in § 2254 (in setting out the restrictions on federal review of state-court convictions and sentences).  All of § 2254 – and thus the limited scope of federal review – applies only to "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the *judgment* of a state court . . . ."  28 U.S.C. § 2254 (emphasis added).  If Mr. Walker asserted that a federal court could grant relief from the sentence he is serving without regard to the § 2254

restrictions on the scope of review, on the grounds that the sentence is not a "judgment," the respondent would be the first to object.  And rightly so.  The 2011 sentence is a "judgment" within the meaning of § 2254 and thus can be set aside by a federal court only if Mr. Walker meets the stringent standards of § 2254.  And the 2011 sentence is also a "judgment" within the meaning of § 2244.  A petition filed within one year after that sentence was entered – as this petition was – is timely.

*Walker*, 2014 WL 2095370, at *2.

Because respondent's motion to dismiss argues only that the petition is untimely when calculated from the date petitioner's 1995 judgment and original sentence became final, the motion to dismiss should be denied.  The undersigned expresses no opinion on whether the petition would be considered untimely if measured from the date petitioner's June 25, 2013 corrected judgment and sentence became final, because respondent has not raised that argument.

### LAW-OF-THE-CASE AND ABUSE-OF-THE-WRIT PRINCIPLES

Respondent next argues that this court should decline to review petitioner's claims under law-of-the-case or abuse-of-the-writ principles.  Respondent asserts that even if petitioner's present petition is not dismissed as "second or successive" the claims raised in the petition may be dismissed as successive if they were raised in a prior § 2254 petition.  (Doc. 18, pp. 49-50 (*citing* 28 U.S.C. § 2244(b)(1), and pre-AEDPA cases)).  Respondent does not identify any of petitioner's seven claims as having been raised in petitioner's 2004 federal habeas petition.  The court has compared the claims raised in the present petition with those raised in petitioner's 2004 petition, and finds no duplication.  Petitioner's present amended petition raises the following claims:

Ground 1     The Florida courts unlawfully deprived Petitioner of the direct appeal he was entitled to as a matter of right, in violation of his 5th and 14th Amendment right to due process and access to the

courts.

Ground 2       The Florida courts unlawfully deprived Petitioner of collateral review, in violation of his 5th and 14th Amendment right to due process and access to the courts.

Ground 3       The prosecuting attorney knowingly used false testimony in the pretrial proceedings, in the grand jury, and in trial to illegally seize and admit evidence, mislead the indictment, and to perpetrated [sic] fraud upon the court and jury to convict Petitioner who is innocent of the crime, in violation of the 4th, 5th, 6th and 14th Amendments.

Ground 4       Defense counsel rendered ineffective assistance by failing to object to the prosecuting attorney's knowing use of false testimony, which allowed State to perpetrate fraud upon the court and to unlawfully convict Petitioner who is innocent of the crime, in violation of the 5th, 6th and 14 Amendments.

Ground 5       Defense counsel rendered ineffective assistance by failing to advise Petitioner that he could testify to the grand jury, preventing Petitioner from refuting false testimony used against him. Petitioner is innocent of the crime, and would not have been indicted for first-degree murder if he had been advised of his opportunity to testify. Counsel's failure to advise violated the 5th, 6th and 14th Amendments.

Ground 6       Defense counsel rendered ineffective assistance by making insufficient argument for a judgment of acquittal. This caused Petitioner, who is innocent of the charged offense, to be convicted of first-degree murder based upon false testimony and evidence insufficient to establish the required element of premeditation, violating the 5th, 6th ad 14th Amendments.

Ground 7       The cumulative effect of errors denied Petitioner a fair trial and due process, in violation of the 4th, 5th, 6th and 14th Amendments.

(Doc. 11).   The ineffective assistance claims raised in petitioner's 2004 petition challenged trial counsels' failure to:  (1) challenge the PCR method of DNA analysis, (2) challenge State witness Dr. Rodriguez's testimony, (3) challenge the EAP test based on the lack of preservation of the sample, and (4) pursue the original defense theory that Wade Wallace framed petitioner.   *See Esty v. McDonough*, 2007 WL 1294602, at *17-*31 (copy at Doc. 18, Ex. X).   The remaining claims raised in petitioner's 2004 petition alleged trial court errors, not post-conviction errors or prosecutorial misconduct.   (*Id.*).   As respondent has not shown that law-of-the-case principles bar any of petitioner's  claims, this procedural defense should be rejected.

Respondent also argues that the abuse-of-the-writ doctrine bars all of petitioner's claims, because petitioner could have raised them in his 2004 federal habeas petition but did not.   (Doc. 18, pp. 51-54  (*citing* pre-AEDPA cases)).   The Court in *Magwood* addressed a similar argument.   In *Magwood*, the State urged the Court to dismiss the petitioner's fair-warning claim as successive or abusive because he had an opportunity to raise the claim in his first § 2254 petition, but failed to do so.   The Court explained that AEDPA modified abuse-of-the-writ principles, and that the question of whether a claim should be dismissed or not heard because it could have been raised in a prior application is a "subsequent inquiry" made under 28 U.S.C. § 2244(b), only if the petition is deemed "second or successive."   *Magwood*, 561 U.S. at 336-337; *see also id.* at 331 (framing the scope and effect of the *Magwood* Court's decision:  "[I]f Magwood's application was 'second or successive,' the District Court should have dismissed it in its entirety because he failed to obtain the requisite authorization from the Court of Appeals.   If, however, Magwood's application was not second or successive, it was not subject to § 2244(b) at all, and his fair-warning claim was reviewable (absent procedural default).").   The Eleventh

Circuit in *Insignares* applied this approach. After concluding that Insignares' petition was not second or successive, the court reviewed Insignares' claims on the merits, even though they challenged the undisturbed conviction and were the same claims Insignares raised in his first petition (a petition dismissed as untimely). The court did not apply abuse-of-the-writ principles to bar Insignares' claims.

Here, as in *Magwood* and *Insignares*, this is the first petition to address a new state court judgment (the 2013 corrected judgment and sentence) that has not already been challenged in a prior § 2254 application. Thus, abuse-of-the-writ principles do not bar petitioner's claims. Respondent fails to cite any post-AEDPA case in which the Supreme Court or the Eleventh Circuit dismissed a claim as abusive when it was raised in a first application challenging a new judgment. Petitioner's claims are reviewable as long as they state a claim upon which federal habeas relief may be granted and are not procedurally defaulted.

## DISCUSSION OF PETITIONER'S CLAIMS

Grounds One and Two

Petitioner's first claim asserts that the state postconviction appellate court violated state law and petitioner's "due process right to challenge his conviction in his direct appeal from resentencing" when the court dismissed petitioner's 2013 appeal from the order granting his motion to correct sentence under Rule 3.800(a). (Doc. 11, p. 11).[2] Petitioner's second claim asserts that the state postconviction trial court violated state law and petitioner's "due process right to challenge his conviction" on collateral review when the court denied petitioner's second Rule 3.850 motion for postconviction relief motion as untimely. (*Id*., p. 12). Respondent asserts

---

[2] References to pages numbers of petitioner's amended petition and response to the motion to dismiss are to the numbers assigned by the court's electronic filing system.

that these claims raise purely state law issues and do not state a federal constitutional claim upon which habeas relief can be granted. (Doc. 18, pp. 61-67).

Petitioner's Grounds One and Two do not constitute cognizable claims for habeas corpus relief for two reasons. First, to the extent petitioner claims the state courts misapplied or violated state law, his claims provide no basis for federal habeas relief. Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Barclay v. Florida*, 463 U.S. 939, 958-59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted). "The writ of habeas corpus was not enacted to enforce State-created rights." *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (citation and quotation marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law [and procedure] rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'") (*quoting Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983)). "This limitation on

federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

Second, petitioner's Grounds One and Two challenge the process afforded him in state postconviction proceedings. Challenges of that nature do not constitute a cognizable claim for habeas corpus relief, because they represent attacks on proceedings collateral to petitioner's confinement and not the confinement itself. *See Alston v. Dep't of Corr., Fla.*, 610 F.3d 1318, 1326 (11th Cir. 2010) (holding that habeas petitioner's challenge to his state postconviction proceeding (the state court's ruling that he waived his state collateral proceedings) was not cognizable on federal habeas review). As the court in *Alston* explained:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), *cert. denied*, — U.S. —, 130 S. Ct. 500, 175 L. Ed. 2d 355 (2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment – *i.e.*, the conviction itself – and thus habeas relief is not an appropriate remedy." *Carroll*, 574 F.3d at 1365. Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992).

*Id*. at 1325-26.

Petitioner's claims in Grounds One and Two do not undermine the legality of petitioner's murder conviction itself; they allege defects in petitioner's state collateral proceedings – his 2013 and 2014 postconviction proceedings. Petitioner concedes

as much.  (Doc. 23, p. 39 (emphasizing that "Claims I & II do ***not*** challenge the conviction; they show the Florida courts caused constitutional error by depriving Petitioner of direct and collateral review after his 2013 resentencing.")).  Because Grounds One and Two do not state a basis for federal habeas relief, they should be denied without reaching the merits.  *See e.g., Carroll*, 574 F.3d at 1365-66 (11th Cir. 2009) (holding that habeas petitioner's claim – that the state court violated due process when it summarily denied his postconviction claim without an evidentiary hearing – did not state a claim on which federal habeas relief could be granted); *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330 (11th Cir. 2006) (holding that state court's failure to conduct an evidentiary hearing on a postconviction motion does not constitute a cognizable claim for federal habeas relief); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th  Cir. 1987) (holding that habeas petitioner's claim that errors in Rule 3.850 proceeding violated his right to due process did not state a basis for habeas relief because the claim "[went] to issues unrelated to the cause of petitioner's detention.").

<u>Grounds Three through Seven</u>

Petitioner's Ground Three (hereinafter "*Giglio*[3] claim") claims that the prosecutor knowingly used false testimony (1) to obtain the search warrant, (2) to obtain the indictment and (3) during trial.  (Doc. 11, pp. 14-15, 23).  Petitioner's Grounds Four, Five and Six claim petitioner's trial counsel were ineffective when they failed to object to the prosecutor's use of perjured testimony, failed to inform petitioner he could testify before the grand jury, and failed to make a sufficient argument for a judgment of acquittal.  (*Id*., pp. 16-21).  Petitioner's Ground Seven

---

[3] *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

claims that the cumulative effect of the prosecutor's misconduct and trial counsels'
ineffectiveness denied petitioner a fair trial.  (*Id.*, p. 23).  Respondent asserts that all
of these grounds are procedurally defaulted, because they were not properly presented
to the state courts and were rejected on independent and adequate state procedural
grounds.  (Doc. 18, pp. 70-85).

      A.     Exhaustion and Procedural Default

      Section 2254(b)(1) provides that "[a]n application for a writ of habeas corpus
on behalf of a person in custody pursuant to the judgment of a State court shall not
be granted unless it appears that" the applicant has exhausted the remedies available
in the state courts, there is an absence of available state corrective process, or
circumstances exist that make the process ineffective to protect the applicant's rights.
28 U.S.C. § 2254(b)(1).  When asked on the petition form whether he presented
Ground Three to the state courts, petitioner responded:

> Petitioner properly raised this issue in his 2013 direct appeal
> [citing petitioner's initial brief filed in his Rule 3.800 appeal provided
> at Doc. 1, App. B] and 2014 post-conviction motion [citing documents
> filed in petitioner's 2014 Rule 3.850 proceeding].  However, the Florida
> courts dismissed the direct appeal as being unable to challenge
> Petitioner's conviction; and denied the post-conviction motion as
> untimely, basing the time limitation on the previous 1995 judgment
> which no longer holds Petitioner in custody and which was not the
> judgment at issue.  By doing so, the Florida courts rejected or refused to
> follow *Burton v. Stewart*, 127 S. Ct. 793 (2007); *Ferreira v. Sec'y, Dep't
> of Corr.*, 494 F.3d 1286 (C.A. 11 (Fla.) 2007) which established both
> state filings to be timely and able to challenge the conviction because
> Petitioner's 2013 resentencing constituted a new judgment.  Petitioner
> contends this established that either he had no state remedies, or that the
> Florida courts denied him due process and unlawfully deprived him of
> any opportunity to exhaust Ground Three.

(Doc. 11, p. 15).  Petitioner provides a similar explanation concerning exhaustion of

Grounds Four through Seven. (Doc. 11, pp. 17, 19, 21, 23; *see also* Doc. 23, pp. 75, 106, 119, 130, 139-40).

Petitioner's argument that there is an absence of available state corrective process, or that the available processes are ineffective to protect his rights, is without merit. Florida provides effective corrective processes for prisoners raising claims, such as those presented here, challenging their criminal convictions on constitutional grounds. These processes include (as relevant here) a direct appeal from a final judgment adjudicating guilt, *see* Fla. R. App. P. 9.140, and a motion for postconviction relief, *see* Fla. R. Crim. P. 3.850. Petitioner availed himself of both processes by raising nine guilt-phase claims on direct appeal, and four grounds of ineffective assistance of trial counsel in his counseled first Rule 3.850 motion. Petitioner could have availed himself of these state corrective processes by raising his prosecutorial misconduct claim (Ground Three) in his 1992 direct appeal and his ineffective assistance claims (Grounds Four through Seven) in his first Rule 3.850 proceeding. Petitioner did not do so. The fact that Florida's procedural restrictions barred petitioner from later raising them after his sentence was corrected in 2013 does not negate the fact that the processes were available to petitioner had he simply presented them at the proper time and in the proper manner. Petitioner has not established that he is excused from complying with § 2254(b)'s exhaustion requirement.

Respondent asserts, and petitioner concedes, that when petitioner presented Ground Three to the state courts, his claim was rejected on state procedural grounds – that petitioner could not use his Rule 3.800(a) postconviction appeal to obtain second direct review of his undisturbed 1992 conviction, and that petitioner's attempt to raise the claim in his second Rule 3.850 motion was untimely. (*See* Doc. 18, pp.

62-64, 66-67, 70-71, 73-74; *see also* Doc. 11, p. 15; Doc. 12, pp. 11-12; Doc. 23, pp. 75-76).   Respondent also asserts, and petitioner concedes, that when petitioner presented Grounds Four through Seven to the state courts in his second Rule 3.850 motion, the claims were rejected on state procedural grounds – Rule 3.850's two-year time limitation.  (*See* Doc. 18, pp. 74-85; *see also* Doc. 11, pp. 17-25; Doc. 23, pp. 106-107, 119-120, 130-131, 139-140).   The record establishes that the state courts rejected the claims petitioner now raises as Grounds Three through Seven on independent state procedural grounds.   The First DCA's imposition of a procedural bar in petitioner's Rule 3.800(a) appeal to reject petitioner's claims challenging his undisturbed judgment of conviction adequately supported the judgment of that court. *See* Doc. 18, pp. 62-64 (citing Florida state cases).   The state court's imposition of a procedural bar in petitioner's 2014 (second) Rule 3.850 proceeding to reject petitioner's claims as time-barred was also adequate to support its judgment.   *See* Fla. R. Crim P. 3.850(b) (establishing two-year time limitation for postconviction motions); *see also  Joseph v. State*, 835 So. 2d 1221, 1222 n.3 (Fla. 5th DCA 2003); *O'Neill v. State*, 6 So. 3d 630, 630 (Fla. 2d DCA 2009); *Pierce v. State*, 875 So. 2d 726, 727 n.1 (Fla. 4th DCA 2004); *Gillis v. State*, 32 So. 3d 681, 682 (Fla. 2d DCA 2010); *Perez v. State*, 956 So. 2d 1221, 1222 (Fla. 4th DCA 2007).   Petitioner's Grounds Three through Seven are procedurally defaulted.

A habeas petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).   "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (*quoting Murray v.*

*Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).   The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).   "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998).

B.    Cause and Prejudice

Petitioner argues as cause for his procedural default of Ground Three (the prosecutor's alleged knowing use of false testimony) that trial counsel was ineffective for failing to preserve the issue by objection, and that petitioner "did not even know of the false testimony until after the direct appeal was complete, when he received a copy of the original transcript containing the witness depositions that revealed the falsehoods."  (Doc. 23, pp. 52-53).  Petitioner argues as cause for his procedural default of Grounds Four through Seven (ineffective assistance of trial counsel) that his postconviction counsel was ineffective for failing to raise the issues in petitioner's first Rule 3.850 motion.  (*Id*.).  Petitioner relies on *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012), to support his argument.  (*Id*.).

The alleged ineffective assistance of trial counsel cannot be considered cause for petitioner's procedural default of Ground Three (the prosecutor's knowing use of false testimony), because petitioner procedurally defaulted the ineffective trial counsel claim by failing to timely present it to the state courts (petitioner presented the claim in his second Rule 3.850 motion which was rejected as untimely).  Because petitioner procedurally defaulted his ineffective assistance of trial counsel claim, this court cannot consider it as cause for petitioner's procedural default of Ground Three. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51, 120 S. Ct. 1587, 1591, 146 L. Ed. 2d 518  (2000) (concluding that a federal habeas court is barred from considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); *Hill v. Jones*, 81 F.3d 1015, 1029-31 (11th Cir. 1996); *Dowling v. Sec'y for Dep't of Corr.*, 275 F. App'x 846 (11th Cir.  2008) (rejecting habeas petitioner's contention that appellate counsel's ineffectiveness was the cause for his failure to raise federal constitutional claims on direct appeal in state court; explaining:  "Dowling did not raise this particular ineffective assistance of appellate counsel claim in his petition for state habeas relief.   Because Dowling did not raise his ineffective assistance of appellate counsel claim in state court and is precluded from seeking additional review of that claim in state court, Dowling's ineffective assistance of appellate counsel claim is procedurally defaulted and cannot be considered as cause for the default of his trial court error claim.").

The alleged ineffective assistance of postconviction counsel cannot be considered cause for petitioner's procedural default of Grounds Four through Seven (ineffective assistance of trial counsel), because petitioner has not made the requisite showing under *Martinez*.   To establish cause under *Martinez*, petitioner must demonstrate that postconviction counsel was himself ineffective for failing to raise

in petitioner's first Rule 3.850 motion the ineffective assistance and cumulative error claims comprising Grounds Four through Seven of the instant petition. As the Supreme Court explained in *Carpenter, supra*, "[n]ot just any deficiency in counsel's performance will do . . . the assistance must have been so ineffective as to violate the Federal Constitution." 529 U.S. at 451 (citation omitted). "While *Martinez* did not establish a constitutional right to counsel in state post-conviction proceedings, it did adopt the constitutional standard from *Strickland* as the standard governing petitioners' claims that their post-conviction counsel's conduct should excuse a procedural default." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014) (*citing Martinez*, 132 S. Ct. at 1318). Petitioner must establish that his postconviction counsel's conduct "fell below an objective standard of reasonableness," and that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Hittson*, the Eleventh Circuit cautioned that a petitioner seeking to satisfy *Martinez* "must show more than the mere fact [postconviction counsel] failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims." *Id*. at 1263. The Eleventh Circuit explained:

> Obviously the merits of the underlying ineffective-assistance claims have some bearing on both *Strickland* prongs; collateral counsel would clearly not fall below *Strickland*'s minimum competency requirements by deciding not to raise a meritless claim, and a petitioner would also not be prejudiced by his counsel's failure to do so.
>
> But the merits of the underlying claim is only a part of the *Strickland* analysis. With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective-assistance claims that he now wishes his collateral counsel

had raised.  However, a petitioner does not establish constitutionally defective performance simply by showing that (a) potentially meritorious claims existed and (b) his collateral counsel failed to raise those claims.  *Murray*, 477 U.S. at 486, 106 S. Ct. at 2644 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.").  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983).  "[A] per se rule that . . . the professional advocate, [is not] allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id*. at 751, 103 S. Ct. at 3313.

As we have explained, *Strickland* instructs courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" – that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 689-90, 104 S. Ct. at 2065-66.  To overcome this presumption, a petitioner must "establish that no competent counsel would have taken the action that his counsel did take."  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.2000) (en banc).

*Id*. at 1262-63 (alteration in original) (footnote omitted).

Petitioner has not established that his postconviction counsel was incompetent for failing to raise the ineffective assistance claims now asserted in Grounds Four through Seven.  During petitioner's first Rule 3.850 proceeding, petitioner was represented by Robert Augustus Harper.  Attorney Harper's postconviction motion included the following claims of trial counsel's ineffectiveness:  (1) trial counsel were ineffective for failing to prepare for, or even be aware of, the State's rebuttal

witness, Dr. William Rodriguez, and for failing to request a *Frye*[4] hearing on the substance of Dr. Rodriguez's testimony; (2) trial counsel were ineffective for failing to request a *Frye* hearing on the admissibility of polymerase chain reaction (PCR) amplification of DNA which was used in testing DNA evidence in petitioner's case; (3) trial counsel were ineffective for failing to challenge the admissibility of EAP blood test results on the grounds that the sample used was more than seven days old and no preservative was used, rendering the results of the test unreliable; and (4) trial counsel were ineffective for abandoning the defense theory that Wade Wallace framed petitioner and for failing to replace that defense theory with another theory. With regard to the last claim, Attorney Harper presented several areas of possible evidence which, he contended, trial counsel should have presented to the jury: (a) counsel should have called Wade Wallace as a defense witness, (b) counsel should have secured a transcript of Mr. Wallace's grand jury testimony, (c) counsel should have called Angela Coffman, who was Mr. Wallace's girlfriend, (d) counsel should have used other evidence which suggested petitioner was "framed", (e) counsel should have conducted measurements of Wade Wallace's tires, (f) counsel should have made several additional arguments in closing (for example, argument challenging the weapons found at the scene, argument concerning petitioner's boots

---

[4] Under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), it must be shown that a "novel" scientific principle or test is "sufficiently established to have gained general acceptance in the particular field in which it belongs" before it is deemed adequately accurate and reliable to be admitted in court. *Id*. at 1014. The Florida Supreme Court has defined "general acceptance" to mean acceptance by a clear majority of the members of the relevant scientific community, with consideration by the trial court of both the quality and quantity of those opinions. *Brim v. State*, 695 So. 2d 268 (Fla. 1997).

which had the victim's blood on them,[5] and argument concerning a piece of wrapping paper found at the scene which bore the inscription, "To Sean, love Lauren."), and (g) counsel should have elicited testimony from petitioner to establish that Wade Wallace had petitioner's coat prior to the murder and returned it on Christmas Day after the murder.  The state postconviction court conducted an evidentiary hearing on all of the claims and denied relief.

Petitioner claims Attorney Harper was incompetent for failing to tack on the four additional claims from petitioner's 2014 second Rule 3.850 motion (and instant federal habeas petition); however, petitioner has alleged no facts to overcome the presumption that Attorney Harper exercised reasonable professional judgment in deciding which claims to raise and which claims to omit.  In petitioner's response to respondent's motion to dismiss, petitioner makes the following general allegations of postconviction-counsel incompetence:

> [S]ince Petitioner's [postconviction] counsel did not raise his trial counsels' failure to object to the *Giglio* violations as ineffective assistance claims in the 1996 post-conviction motion, [postconviction] counsel thereby rendered ineffective assistance since Florida requires ineffective assistance claims to be raised in initial-review collateral motions.  *Sims v. State*, 998 So. 2d 494 (Fla. 2008).

> Petitioner contends his trial and appellate counsel's ineffective assistance are a showing of cause to overcome procedural default or other bars pursuant to *Martinez*.  To show the prejudice required by *Martinez* and *Sykes* Petitioner relies upon Claims III-VII as establishing prosecutorial misconduct and ineffective assistance that caused actual prejudice.

(Doc. 23, p. 53).  Such generalized allegations are insufficient in habeas cases:

---

[5] Both petitioner and his mother testified at trial that Mr. Wallace borrowed a pair of petitioner's boots on Christmas Day, but returned a pair which were dirtier and covered with sand.

> Rule 2(c) of the Rules Governing Section 2254 Cases requires petitioners to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." In other words, Rule 2(c) "mandate[s] 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a)." *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011); *see also Mayle v. Felix*, 545 U.S. 644, 655, 125 S. Ct. 2562, 2570, 162 L. Ed. 2d 582 (2005) (explaining that § 2254 Rule 2(c) is more demanding than Fed.R.Civ.P. 8(a)).

*Hittson* at 1265 (footnote omitted).  Petitioner's allegations of postconviction counsel ineffectiveness are not technically "grounds for relief," since they are pled only to establish cause to excuse petitioner's procedural default; however, petitioner "must nevertheless plead the facts necessary to demonstrate that his lawyers were ineffective under the standard of *Strickland*."  *Hittson*, 759 F.3d at 1265 n.62 (*citing Hill v. Lockhart*, 474 U.S. 52, 60, 106 S. Ct. 366, 371, 88 L. Ed. 2d 203 (1985)).

Petitioner's generalized allegations do not satisfy Rule 2(c)'s requirements; petitioner has not alleged any facts to support his allegations that Attorney Harper was incompetent for failing to raise the four ineffective assistance of trial counsel claims petitioner presents in Grounds Four through Seven.  Petitioner fails to make the requisite showing under *Martinez* to excuse his procedural default.

C.    Fraud

Petitioner next argues that this court should nonetheless consider petitioner's claims on the merits under the fundamental miscarriage of justice exception "because the prosecuting attorney in his trial perpetrated fraud upon the court to unlawfully convict Petitioner despite his actual innocence."  (Doc. 23, pp. 38, 54-55) (footnote omitted).  Petitioner cites *Gonzalez v. Sec'y Dep't of Corr.*, 366 F.3d 1253, 1278 (11th Cir. 2004) and *Douglas v. Workman*, 560 F.3d 1156, 1194 (10th Cir. 2009), for the proposition that "Federal law holds there is a fraud exception to procedural bars

in habeas proceedings." (Doc. 23, p. 54). Unfortunately, petitioner misrepresents the holding of *Gonzalez*. In *Gonzalez*, the Eleventh Circuit analyzed whether, and to what extent, a motion filed under Rule 60 of the Federal Rules of Civil Procedure may be utilized <u>to reopen a final habeas judgment</u>. The court's ultimate conclusion was that "[t]he point of the rule we announce today is that the petitioner may not get around the statutory restrictions on second or successive petitions by filing a rule 60(b) motion, unless the grounds of the motion fit within one of the two exceptions we are about to discuss." *Id*. at 1277. The court recognized two exceptions: (1) where the judgment must be reopened to correct clerical errors in the judgment itself, *id*., at 1278; and (2) where the Rule 60(b) motion demonstrates that "there was a fraud on the court <u>which led to the denial of the habeas petition</u>." *Id*. (emphasis added). The court held that in those two instances, a Rule 60(b) motion will not be construed as an unauthorized second or successive habeas petition and will not be subject to dismissal for lack of jurisdiction. The *Gonzalez* court did not hold, or even suggest, that it was recognizing a "fraud" exception to excuse a habeas petitioner's procedural default of a claim. The same is true of the Tenth Circuit's opinion in *Douglas, supra*. The *Douglas* court did not create a fraud exception to excuse a petitioner's procedural default. Petitioner's argument that the prosecutor committed "fraud" in obtaining his conviction does not excuse petitioner's procedural default of Grounds Three through Seven.

D.    Actual Innocence

Petitioner concludes his broad assault on the procedural bar by proposing he is actually innocent. (Doc. 23, p. 54). Petitioner alleges the following to support his claim of actual innocence:

Because of the prosecutor's misconduct and trial counsel's ineffective assistance, Petitioner's trial court and jury were presented unlawfully seized evidence, on a charge in an indictment based upon false testimony, and heard perjured testimony regarding an alleged murder weapon.  Petitioner is actually innocent, and no reasonable juror would have convicted him if not for the falsehoods, or if defense counsel had objected.  At the very least, Petitioner would not have been convicted of first-degree murder, as the only showing of premeditation was the false testimony.

Petitioner submits Claims III-VII make a showing of fraud pursuant to *Gonzalez*, and are evidence "not presented at trial" as required by *Schlup*, for the fraud and actual innocence exceptions to apply.

*Id*., p. 55.

Petitioner urges this court to review all of the evidence supporting his *Giglio* claim (Ground Three), to discern whether he has made the threshold showing under *Schlup*.  Petitioner's "new evidence" falls broadly into three categories:  (1) purported new evidence of *Giglio* violations in the application for the search warrant (doc. 23, pp. 77-96); (2) purported new evidence of *Giglio* violations in the grand jury proceeding (doc. 23, pp. 97-100); and (3) purported new evidence of *Giglio* violations at trial (doc. 23, pp. 100-104).

Petitioner does not grapple with the actual showing required under *Schlup*, which focuses exclusively on the impact of the new evidence on the <u>trial proceeding</u>. It is at trial where the petitioner's guilt is determined.  Petitioner must produce "new reliable evidence . . . not presented at trial," *Schlup*, 513 U.S. at 324, that "raise[s] sufficient doubt about <u>[his] guilt</u> to undermine confidence in the result of the <u>trial</u>," *id*. at 317 (emphasis added); *see also House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 l. Ed. 2d 1 (2006) ("[T]he habeas court must consider all the evidence, old

and new, incriminating and exculpatory," and "make a probabilistic determination about what reasonable, properly instructed jurors would do." (*citing Schlup*, 513 U.S. at 327-29)).  The "new evidence" relating to the search warrant affidavit consists primarily of pre-search-warrant witness statements to law enforcement, pretrial depositions, etc. which, according to petitioner, show that Deputy O'Neal (the officer who executed the affidavit in support of the search warrant) omitted and misrepresented facts to obtain probable cause to search petitioner's residence.  (Doc. 23, pp. 77-96).  This evidence, at most, provides impeachment material that could have been used at the suppression hearing.  Such newly discovered impeachment evidence does not provide sufficient–or really any– evidence of actual innocence to overcome a procedural bar.  *See Calderon v. Thompson*, 523 U.S. 538, 563, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence).  Petitioner's "new evidence" relating to the search warrant affidavit, and the variances it allegedly shows, is not new reliable evidence that petitioner did not murder Miss Ramsey.  The evidence merely undermines the reasonableness of the search of petitioner's residence, a subject that does not bear upon guilt in the required factual sense.

The same is true of petitioner's "new evidence" relating to the grand jury proceeding.  Petitioner's new evidence consists of statements Wade Wallace made during pre-indictment witness interviews and pre-trial depositions that, according to petitioner, show that Wallace was not credible and his grand jury testimony pertaining to petitioner's premeditation of the murder was false.  (Doc. 23, pp. 97-99).

Petitioner's evidence that Wallace was unreliable or lacked credibility during his grand jury testimony, is not reliable, exculpatory evidence that petitioner did not murder Miss Ramsey.[6]  Petitioner effectively concedes this point when he describes the impact of his "new evidence": "without [Wallace's] false testimony, the grand jury would only have charged Petitioner with second-degree murder."  (Doc. 23, pp. 99-100).  Petitioner's "new evidence" pertaining to Wade Wallace's testimony at the grand jury proceeding does not plausibly show petitioner is factually innocent.

Remaining is petitioner's "new evidence" that the State presented false or misleading testimony at the guilt phase of his trial.  At trial, the State connected a receipt for a knife petitioner purchased at Albertson's the day of, or just prior to, Miss Ramsey's murder to a knife found at the crime scene and a stab wound to Miss Ramsey's chest area.  (Doc. 23, pp. 100-104).  Petitioner's new evidence is two-fold.  First, petitioner presents "new evidence" that FDLE analyst Janice Johnson lied when she testified that when she and Deputy O'Neal inspected the knives sold at Albertson's to see if any knife other than a particular Ecko brand knife (the knife found at the crime scene), sold for $5.49 (the price indicated on petitioner's receipt), they found no other knives.  (Doc. 23, pp. 100-101).  Second, petitioner presents "new evidence" that State's witness Dr. Havard, a pathologist who performed an autopsy on Miss Ramsey, "lied by omission" when he failed to provide unsolicited trial testimony going into more detail about his autopsy report.  Petitioner says Havard's omission allowed the State to "false[ly] portray[ ] that the Ecko knife found at the scene was used to stab Ramsey."  (Doc. 23, p. 102).  Petitioner explains:

---

[6] Wade Wallace did not testify at petitioner's trial, and thus had no impact on the jury's finding of guilt.

> In trial, Dr. Havard testified Ramsey's stab wound was 4cm wide (Resp. Ex. F 860-61); and FDLE Analyst Mungen stated the Ecko knife was consistent with cuts in Ramsey's sweater (Resp. Ex. F 807-08). However, Dr. Havard's autopsy report states that, though the stab wound was 4cm wide at the skin surface, it narrowed to 2cm wide where it entered and exited the lung, and was only 1 cm wide at the pluera (Pet. Ex. B 1583-84).  A comparison of the autopsy measurements to the Ecko knife's 3.5cm width and shape shows the knife clearly could not have caused Ramsey's stab wound (App. H38).  State never presented the autopsy's full measurements or the knife's width to the jury, falsely portraying the knife as being involved when it could not have been.

(Doc. 23, pp. 102-03).  Petitioner asserts that the prosecutor used this "false" or "misleading" trial testimony concerning the knife "to perpetrate fraud upon the court by arguing they proved premeditation in opening and closing arguments, and against a judgment of acquittal [on the issue of premeditation].  This caused actual prejudice because State could not have obtained a conviction for first-degree premeditated murder without these falsehoods." (Doc. 23, pp. 103-104) (citations to trial transcript omitted).

Petitioner's clever allegations fail to state a cognizable actual innocence claim under *Schlup*.  First, and apparently completely lost on petitioner, his own characterization of the "new evidence" of necessity shows his killing of Miss Ramsey was merely not premeditated.  Petitioner does not argue, much less show, that the "new evidence" absolves him of Miss Ramsey's murder completely.  "[T]he narrow and extraordinary nature of *Schlup*'s actual innocence 'gateway' does not extend to petitioners . . . who did the killing and whose alleged 'actual innocence' of a non-capital homicide conviction is premised on being guilty of only a lesser degree of homicide. *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1015 (11th Cir. 2012); *see also id.* at 1016 (explaining that "the Supreme Court's categorical

language in actual innocence cases does not suggest that it is narrowly slicing the various degrees of wrongdoing"); *id*. at 1017 ("Evidence that would at best substitute one criminal homicide conviction for another homicide conviction is ordinarily not of th[e] caliber" demanded by *Schlup*.).  The court may reject petitioner's actual innocence claim on this basis alone.

Petitioner's actual innocence claim fails for the additional reason that his evidence pertaining to Janice Johnson's testimony is not "new."  To demonstrate Johnson's testimony was false, petitioner's relies on Deputy O'Neal's <u>trial testimony</u> that there were other knives at Albertson's that sold for $5.49.  (Doc. 23, p. 102).  Since O'Neal's testimony was presented at trial and considered by the jury in determining petitioner's guilt, it is not "new evidence" and cannot serve to open the actual innocence gateway.

As to Dr. Havard's testimony and the State's "failure to present the autopsy's full measurements or the knife's width to the jury," the trial transcript establishes that the State introduced into evidence a photograph of the knife (doc. 18, Ex. F. pp. 597, 602 (referencing State's Exhibit 2)) as well as the knife itself (doc. 18, Ex. F, p. 607 (referencing State's Exhibit 8)), which provided the jury the ability to assess the size and shape of the knife found at the crime scene.  As to the autopsy report, petitioner misapprehends his burden in asserting actual innocence.  Actual-innocence claims "come[ ] before the habeas court with a strong – and in the vast majority of the cases conclusive – presumption of guilt."  *Schlup*, 513 U.S. at 326 n. 42.  This is not a question of whether reasonable doubt may have existed if new information had come before the jury, or whether sufficient evidence sustains the judgment, "but rather that no reasonable juror would have found the defendant guilty."  *Schlup*, 513 U.S. at 329. The undersigned has reviewed Dr. Havard's autopsy report (doc. 23, Ex. B), and finds

that the report, considered with the trial record as a whole, does not "undermine confidence in the result of the trial" such that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 537 (internal quotation marks omitted).

To summarize, petitioner's Grounds Three through Seven are procedurally defaulted. Petitioner has made none of the requisite showings to excuse his procedural default, nor has he met *Schlup*'s actual innocence exception. Petitioner's procedural default bars federal habeas review of Grounds Three through Seven.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That respondent's motion to dismiss the amended petition as an unauthorized second or successive petition, as untimely, and as an abuse of the writ (doc. 18) be DENIED.

2.  That the amended petition for writ of habeas corpus (doc. 11), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Sean Patrick Esty* in the Circuit Court for Escambia County, Florida, Case No. 92-132 be DENIED on the grounds that petitioner's Grounds 1 and 2 fail to state a claim on which federal habeas relief may be granted; and Grounds 3-7 are procedurally defaulted.

3.  That the clerk be directed to close the file.

4.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 4th day of June, 2015.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.